IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 15, 2012 Session


**EARLINE WADDLE v. LORENE B. ELROD**


**Appeal by Permission from the Court of Appeals, Middle Section**
**Chancery Court for Rutherford County**
**No. 07-0147CV      Robert E. Corlew, III, Chancellor**

---

**No. M2009-02142-SC-R11-CV - Filed April 24, 2012**

---

In this appeal we must determine whether the Statute of Frauds, Tenn. Code Ann. § 29-2-101(a)(4) (Supp. 2011), applies to a settlement agreement requiring the transfer of an interest in real property; and, if so, whether emails exchanged by the parties' attorneys satisfy the Statute of Frauds under the Uniform Electronic Transactions Act ("UETA"), Tenn. Code Ann. §§ 47-10-101 to -123 (2001 & Supp. 2011). We hold that the Statute of Frauds applies to settlement agreements requiring the transfer of an interest in real property and that the emails, along with a legal description of the property contained in the cross-claim, satisfy the Statute of Frauds. Accordingly, we affirm the judgment of the Court of Appeals enforcing the settlement agreement.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed**

CORNELIA A. CLARK, C.J., delivered the opinion of the Court, in which JANICE M. HOLDER, GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Wm. Kennerly Burger, Murfreesboro, Tennessee, for the appellant, Lorene B. Elrod.

Mary Beth Hagan and John T. Blankenship, Murfreesboro, Tennessee, for the appellee, Earline Waddle.

**OPINION**

**Facts and Procedural History**

On January 29, 2007, Regent Investments 1, LLC ("Regent") sued octogenarian Earline Waddle,[1] and her niece, Lorene Elrod. According to the allegations of the complaint, Regent contracted to purchase from Ms. Waddle approximately four acres of real property located at 2268 Prim Lane, in Rutherford County, Tennessee ("the Prim Lane property"), for $230,000. Regent paid Ms. Waddle $10,000 earnest money when the contract was signed. However, in preparing to close the deal, Regent learned of a quitclaim deed by which Ms. Waddle had conveyed one-half of her interest in the Prim Lane property to Ms. Elrod. Regent sued Ms. Waddle, alleging breach of contract, fraud, and intentional and negligent misrepresentation. Regent requested specific performance, $1,000,000 in damages, attorney's fees, costs, and pre-judgment interest. Regent also asked the trial court to set aside the quitclaim deed, arguing that Ms. Elrod had wrongfully obtained her one-half interest by exercising undue influence over Ms. Waddle.

On May 14, 2007, Ms. Waddle filed a cross-claim against Ms. Elrod, also alleging that Ms. Elrod had acquired her one-half interest in the Prim Lane property through undue influence. The cross-claim included a legal description of the Prim Lane property. According to the allegations of the cross-claim, after Ms. Waddle's husband of more than fifty years died on February 12, 2001, Ms. Elrod began frequently visiting Ms. Waddle. In early March 2001, Ms. Elrod arranged for her own attorney, whom Ms. Waddle did not know, to draft both the quitclaim deed conveying a one-half interest in the Prim Lane property to Ms. Elrod and a durable power of attorney naming Ms. Elrod as Ms. Waddle's attorney-in-fact. On March 15, 2001, Ms. Elrod drove Ms. Waddle to the attorney's office and persuaded her to sign both documents. Ms. Waddle alleged that she did not have the benefit of independent legal counsel prior to signing the documents, that Ms. Elrod provided no money or consideration for the interest she acquired in the Prim Lane property, that she did not willingly or knowingly intend to convey any interest in the Prim Lane property to Ms. Elrod, and that the power of attorney executed contemporaneously with the quitclaim deed created a confidential relationship giving rise to a presumption of undue influence with respect to the quitclaim deed. Ms. Waddle asked the trial court to set aside the quitclaim deed and to award her "any and all damages" caused by Ms. Elrod's undue influence, including, and in

---

[1] Ms. Waddle's name is misspelled in the record on appeal as "Earlene Waddell." This opinion uses the correct spelling of Ms. Waddle's name as evidenced by her signature on various documents in the record.

particular, the damages resulting from Ms. Waddle's inability to convey Regent marketable title to the Prim Lane property.[2]

On July 10, 2007, Ms. Elrod filed an answer to the cross-claim, denying all allegations of undue influence and wrongdoing and arguing that the assistance she had provided Ms. Waddle served as consideration for the quitclaim deed.

On April 28, 2009, Regent agreed to dismiss with prejudice its claims against Ms. Waddle and Ms. Elrod. In exchange, Ms. Waddle agreed[3] to return Regent's $10,000 earnest money, and both Ms. Waddle and Ms. Elrod agreed that Regent would not be responsible for any portion of the court costs.[4] Ms. Waddle's cross-claim against Ms. Elrod remained pending, however, with a jury trial scheduled for June 2 to June 4, 2009.

The day before trial, Ms. Elrod's attorney, Mr. Gregory Reed, advised Ms. Hagan, counsel for Ms. Waddle, that Ms. Elrod was willing to return her one-half interest in the Prim Lane property to avoid going to trial if Ms. Waddle would settle the case and release all other claims against her. Through her attorney, Ms. Waddle agreed to settle the case on the condition that she would not be responsible for any of the court costs. Around 4:00 p.m., Mr. Reed advised Ms. Hagan that Ms. Elrod had agreed to settle the case with Ms. Waddle's condition. At 4:34 p.m., Ms. Hagan sent the following email to Mr. Reed:

> Greg,
> This confirms that we have settled this case on the following terms:
> Elrod deeds property interest back to Waddle, Both [sic] parties sign full release, Waddle bears no court costs.
> Let me know if I have correctly stated our agreement.
> Thanks,
> Mary Beth

---

[2] Ms. Waddle also alleged a claim against Ms. Elrod relating to a bank account. However, the parties settled this claim, as evidenced by a March 6, 2009 order. This claim and settlement are not at issue in this appeal.

[3] Although Ms. Waddle was initially represented by counsel, her attorney withdrew, and she was not represented by counsel at the judicial settlement conference. Ms. Waddle obtained new counsel on May 12, 2009, Ms. Mary Beth Hagan, who continues to represent her in this appeal.

[4] On June 3, 2009, the trial court entered an order memorializing Regent's settlement with Ms. Waddle and Ms. Elrod.

At 5:02 p.m., Mr. Reed responded:

> That is the agreement. I understand that you will draft the deed
> and take a shot at the court's order. No admission of guilt is to
> be included.
> Greg Reed

The attorneys thereafter advised the trial court of the terms of the agreement. Believing that a settlement had been reached and that a written order memorializing the settlement would be entered later, the trial court cancelled the jury trial and excused prospective jurors. Counsel for Ms. Waddle prepared and forwarded the settlement documents to counsel for Ms. Elrod. Ms. Waddle, understanding that the settlement had returned sole ownership of the Prim Lane property to her, paid all outstanding property taxes. Approximately three weeks later, however, Ms. Elrod advised her attorney that she had changed her mind and no longer wanted to settle the case. When Ms. Elrod refused to sign the settlement documents, Mr. Reed moved to withdraw from further representation, and the trial court granted Mr. Reed's motion.

On July 13, 2009, Ms. Waddle filed a motion asking the trial court to enforce the settlement agreement. On September 2, 2009, Ms. Elrod filed a response, arguing that the discussions on June 1, 2009, resulted merely in an agreement to agree, with many important material terms unresolved. Alternatively, Ms. Elrod argued that the Statute of Frauds, Tenn. Code Ann. § 29-2-101 (Supp. 2011), bars enforcement of the settlement agreement because it required the transfer of an interest in real property and was not evidenced by a writing signed by Ms. Elrod or her attorney describing with specificity the terms of the agreement and the property at issue. Relying on the Uniform Electronic Transactions Act ("UETA"), see Tenn. Code Ann. §§ 47-10-101 to -123 (2001 & Supp. 2011), Ms. Waddle argued in response that the email from Ms. Elrod's attorney, which confirmed the terms of the settlement and included Mr. Reed's typewritten name, constituted a writing signed by an agent of the party to be charged and satisfied the Statute of Frauds.

Following a hearing, the trial court entered an order on September 15, 2009, enforcing the settlement agreement. The trial court found that Ms. Elrod had agreed through her attorney and authorized agent to settle the case on the terms set out in the June 1, 2009 email. As a result, the trial court divested Ms. Elrod of any right, title, or interest in the Prim Lane property and vested ownership of the property in Ms. Waddle. The trial court also dismissed with prejudice Ms. Waddle's remaining claims against Ms. Elrod, ordered each party to bear her own attorney's fees and discretionary costs, and taxed court costs to Ms. Waddle. The trial court's order did not expressly address either Ms. Elrod's argument that the Statute of Frauds precluded enforcement of the settlement or Ms. Waddle's argument that the emails

constituted writings signed by the party to be charged under the UETA and satisfied the Statute of Frauds.

Ms. Elrod appealed, but she did not challenge the trial court's factual finding that the parties had reached an agreement to settle the case. Rather, she argued that the Statute of Frauds precludes enforcement of the settlement agreement. The Court of Appeals rejected this argument and affirmed the trial court's judgment enforcing the settlement agreement,[5] reasoning that the Statute of Frauds applies only to "any contract for the <u>sale</u> of lands," Tenn. Code Ann. § 29-2-101(a)(4) (emphasis added), and does not apply to a settlement agreement requiring the transfer of an interest in real property. <u>Waddle v. Elrod</u>, No. M2009-02142-COA-R3-CV, 2011 WL 1661772, at *2 (Tenn. Ct. App. Apr. 29, 2011).

We granted Ms. Elrod's application for permission to appeal.

## Standard of Review

The issue before this Court is whether the Statute of Frauds applies to a settlement agreement that requires the transfer of an interest in real property. This is an issue of statutory construction, which we review de novo with no presumption of correctness. <u>See</u> <u>Brundage v. Cumberland Cnty.</u>, 357 S.W.3d 361, 364 (Tenn. 2011). Similarly, whether a writing is sufficient to satisfy the Statute of Frauds is a question of law subject to de novo review. <u>Blair v. Brownson</u>, 197 S.W.3d 681, 683 (Tenn. 2006) (citing <u>Holms v. Johnston</u>, 59 Tenn. (12 Heisk.) 155, 155 (1873)).

## Analysis

As the Court of Appeals recognized, Ms. Elrod does not dispute that the parties reached an agreement;[6] rather, she argues that the Statute of Frauds applies and precludes

_____

[5] The Court of Appeals also reversed the trial court's assessment of court costs to Ms. Waddle because the settlement agreement included Ms. Waddle's condition that she would not be responsible for court costs. While Ms. Elrod argues on appeal that the Statute of Frauds precludes enforcement of the settlement agreement, she does not challenge the Court of Appeals' decision that, if enforceable, the settlement agreement requires Ms. Elrod to pay costs.

[6] Ms. Elrod stated in an affidavit accompanying her response to Ms. Waddle's motion to enforce the settlement agreement that she had "reluctantly agreed" to the deal to "deed the real estate back to [her] aunt." This statement demonstrates that an agreement was reached. <u>See</u> <u>Cobble v. Langford</u>, 230 S.W.2d 194, 196-97 (Tenn. 1950) (finding that the written disaffirmance of a contract constituted written evidence the parties had a prior agreement for purposes of the Statute of Frauds); <u>see also</u> <u>Huffine v. McCampbell</u>, 257 S.W. 80, 89 (Tenn. 1923) (noting that numerous cases have held "that a letter written for the express purpose of
(continued...)

enforcement of the settlement agreement because it required the transfer of an interest in real property.  In contrast, Ms. Waddle argues that the Court of Appeals' judgment should be affirmed because the relevant portion of the Statute of Frauds applies only to contracts for the sale of land.  Alternatively, Ms. Waddle maintains that the emails counsel exchanged and the legal description of the Prim Lane property in Ms. Waddle's cross-claim satisfy the Statute of Frauds.

A settlement agreement made during the course of litigation is a contract between the parties, and as such, contract law governs disputes concerning the formation, construction, and enforceability of the settlement agreement.  See Barnes v. Barnes, 193 S.W.3d 495, 498 (Tenn. 2006); Ledbetter v. Ledbetter, 163 S.W.3d 681, 685 (Tenn. 2005); Sweeten v. Trade Envelopes, Inc., 938 S.W.2d 383, 385 (Tenn. 1996); Envtl. Abatement, Inc. v. Astrum R.E. Corp., 27 S.W.3d 530, 539 (Tenn. Ct. App. 2000).  Like other contracts, a settlement agreement may be subject to the Statute of Frauds.  The Statute of Frauds precludes actions to enforce certain types of parol contracts unless the action is supported by written evidence of the parties' agreement.  Tenn. Code Ann. § 29-2-101(a); Harris v. Morgan, 7 S.W.2d 53, 57 (Tenn. 1928); Huffine, 257 S.W. at 89; Shedd v. Gaylord Entm't Co., 118 S.W.3d 695, 697 (Tenn. Ct. App. 2003); GRW Enters., Inc. v. Davis, 797 S.W.2d 606, 611 (Tenn. Ct. App. 1990).

The settlement agreement in the present case requires a conveyance of real property.  With respect to real property, Tennessee's Statute of Frauds provides:

> No action shall be brought . . . [u]pon any contract for the sale of lands, tenements, or hereditaments, . . . unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party.  In a contract for the sale of lands, tenements, or hereditaments, the party to be charged is the party against whom enforcement of the contract is sought.

Tenn. Code Ann. § 29-2-101(a)(4) (Supp. 2011).[7]

---

[6](...continued)
repudiating a parol contract may constitute a sufficient memorandum").

[7] Originally enacted in 1801, Tennessee's Statute of Frauds is patterned after the British Statute of Frauds and Perjuries enacted in 1677.  See Patton v. M'Clure, 8 Tenn. (Mart. & Yer.) 333, 337 (1828); Price v. Mercury Supply Co., 682 S.W.2d 924, 931-32 (Tenn. Ct. App. 1984).  The Statute of Frauds was not part of the common law of Tennessee.  See State v. King, 40 S.W.3d 442, 446 (Tenn. 2001) (explaining that
(continued...)

The primary purpose of the Statute of Frauds is to reduce the risk of fraud and perjury associated with oral testimony. See, e.g., Cobble, 230 S.W.2d at 196; Yates v. Skaggs, 213 S.W.2d 41, 43 (Tenn. 1948). The Statute of Frauds also fosters certainty in transactions by ensuring that contract formation is not "based upon loose statements or innuendoes long after witnesses have become unavailable or when memories of the precise agreement have been dimmed by the passage of time." Price, 682 S.W.2d at 932 (citing Boutwell v. Lewis Bros. Lumber Co., 182 S.W.2d 1, 3 (Tenn. Ct. App. 1944)). Another purpose of the Statute of Frauds is to protect property owners against "hasty or inconsiderate agreements concerning a valuable species of property" and "misunderstandings as to the nature and extent of such agreements." Brandel v. Moore Mortg. & Inv. Co., 774 S.W.2d 600, 604 (Tenn. Ct. App. 1989).

While this Court has long emphasized that the Statute of Frauds should be strictly adhered to and construed to accomplish its intended purposes, Newnan v. Carroll, 11 Tenn. (3 Yer.) 18, 26 (1832), the Statute of Frauds is an affirmative defense. See Tenn. R. Civ. P. 8.03. In other words, parol agreements within the Statute of Frauds are not void ab initio, and enforcement of such agreements may be barred only if a party pleads the Statute of Frauds. See, e.g., Cobble, 230 S.W.2d at 196; Bailey v. Henry, 143 S.W. 1124, 1127 (Tenn. 1912); Brakefield v. Anderson, 10 S.W. 360, 361 (Tenn. 1889). Parties may choose to abide by parol contracts for the sale of land. Bailey, 143 S.W. at 1127 ("[I]f the parties themselves choose to execute the contract, third parties cannot object."); Brakefield, 10 S.W. at 361 ("Such a contract may be enforced by the consent and upon the application of both parties."). Indeed, the Statute of Frauds "was not enacted for the purpose of permitting a person to avoid a contract. Its object was not to grant a privilege to a person to refuse to perform what he has agreed to do. It was not enacted as a shield to the dishonest . . . ." Cobble, 230 S.W.2d at 196.

The word "sale," used in the statutory phrase "contract for the sale of lands, tenements, or hereditaments,"[8] has long been broadly interpreted to mean any alienation of real property, including even a donation of realty. Bailey, 143 S.W. at 1127. This Court has previously explained that such a broad construction is consistent both with the purposes of the Statute of Frauds and with the common law understanding of the term:

---

[7](...continued)
Tennessee adopted the common law of North Carolina); Herring v. Volume Merch., Inc., 106 S.E.2d 197, 200 (N.C. 1958) (citing Foy v. Foy, 3 N.C. (2 Hayw.) 131, 132 (1801)) (stating that the Statute of Frauds was not part of the common law of North Carolina).

[8] Tenn. Code Ann. § 29-2-101(a)(4).

The word "sale" in our statute of frauds (section 3142, Shannon's Code[9]) means alienation, and an action on a parol contract made by the owner binding him to give or donate land to another, would, we think, fall within the terms of that statute. A contrary holding would open a wide door to perjury and fraud, and defeat, as we think, one of the purposes of the statute.

. . . .

Plaintiff insists that a parol donee of land does not, in legal contemplation, stand upon a parity with a parol vendee . . . . We cannot assent to this proposition. . . . At common law the word "purchase" in its largest and most extensive sense is defined by Littleton to be the possession of lands and tenements which a man hath as by his own act or agreement, and not by descent by any of his ancestors or kindred. In this sense it is contradistinguished from acquisition by right of blood, and includes every other method of coming to an estate but merely that of inheritance, wherein the title is vested in a person, not by his own act or agreement, but by the single operation of law. And says Mr. Blackstone: "Purchase, indeed, in its vulgar and confined acceptation, is applied only to such acquisitions of land as are to be obtained by way of bargain and sale for money, or some other valuable consideration; but this falls far short of the legal idea of purchase, for if I give land freely to another, he is in the eyes of the law a purchaser, and falls within Littleton's definition, for he comes to the estate by his own agreement; that is, he consents to the gift."

Bailey, 143 S.W. at 1127-28 (footnote added).

In the century since Bailey, the Tennessee General Assembly has not amended the Statute of Frauds to ascribe a more narrow meaning to the word "sale." Relying on a legal

---

[9] In all relevant respects, the present version of the Statute of Frauds is identical to the version at issue in Bailey, which provided:

> No action shall be brought . . . [u]pon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one year . . . [u]nless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized.

Shannon's Code of Tennessee § 3142 (1896).

dictionary, Ms. Waddle asks this Court to construe "sale" as meaning "[t]he transfer of property or title for <u>a price . . . in money paid or promised</u>." <u>See</u> <u>Black's Law Dictionary</u> 1364 (8th ed. 2004) (emphasis added). However, Ms. Waddle has failed to provide any persuasive rationale for overruling <u>Bailey</u>, and we decline to do so. Applying <u>Bailey</u>, we conclude that the Court of Appeals erred by holding that the Statute of Frauds does not apply to this settlement agreement.

While this Court has not previously decided whether the Statute of Frauds applies to settlement agreements requiring the transfer of an interest in real property, Tennessee courts have suggested in dicta that such settlement agreements are subject to the Statute of Frauds. <u>See</u> <u>Ledbetter</u>, 163 S.W.3d at 686 n.2 ("We note from the record that the proposed marital dissolution agreement contemplated transfer of title to real property, possibly implicating the application of the Statute of Frauds. However, because neither party has raised the issue nor briefed it, we pretermit it." (citation omitted)); <u>Carroway v. Anderson</u>, 20 Tenn. (1 Hum.) 61, 62-63 (1839) (holding that the Statute of Frauds does not require the pleadings to allege the existence of a writing showing "that the defendant would pay the plaintiff a certain price per acre for all the land included within certain specified limits" in order to settle a lawsuit, but commenting that, "to give validity to [such] an agreement . . . , a writing is necessary"); <u>Ballew v. Ballew</u>, No. W2005-00337-COA-R3-CV, 2006 WL 709198, at *4 n.1 (Tenn. Ct. App. Mar. 22, 2006) (suggesting that the Statute of Frauds applied to the divorce settlement agreement that required one spouse to sell his share of the marital home to the other spouse, but refusing to apply the Statute of Frauds because neither party raised it in the trial court).

Consistent with the rule applied by a majority of jurisdictions, we hereby hold that the Statute of Frauds applies to any settlement agreement requiring a transfer of an interest in real property. <u>See, e.g.</u>, <u>Nicholson v. Barab</u>, 285 Cal. Rptr. 441, 447-49 (Cal. Ct. App. 1991) (holding that the Statute of Frauds applies to parol judicially supervised settlement agreements requiring the transfer of an interest in real property); <u>Perimeter Inv., Inc. v. Amerifirst Dev. Co.</u>, 423 So. 2d 586, 587 (Fla. Dist. Ct. App. 1982) (holding that the Statute of Frauds applies to parol settlement agreements requiring the transfer of an interest in real property); <u>Ogden v. Griffith</u>, 236 P.3d 1249, 1253 (Idaho 2010) (applying the Statute of Frauds to a settlement agreement that called for a deed of trust but concluding that equitable estoppel permitted enforcement of the agreement); <u>Schmidt v. White</u>, 43 S.W.3d 871, 874 (Mo. Ct. App. 2001) (holding that a settlement agreement involving the transfer of an interest in real property is subject to the Statute of Frauds); <u>Omaha Nat'l Bank of Omaha v. Mullenax</u>, 320 N.W.2d 755, 758 (Neb. 1982) ("An alleged oral compromise and settlement agreement [involving a transfer of an interest in real property and] not made in open court is unenforceable where it is in violation of the [S]tatute of [F]rauds or in violation of a court rule requiring all stipulations and agreements of counsel or parties to a suit to be in writing, signed by the parties or their attorneys."); <u>Byblos Corp. v. Salem Farm Realty Trust</u>, 692

A.2d 514, 516-17 (N.H. 1997) ("[W]hen a settlement agreement includes the transfer of an interest in land, it necessarily implicates the [S]tatute of [F]rauds."); Gogel v. Blazofsky, 142 A.2d 313, 316 (Pa. Super. Ct. 1958) ("We therefore hold that the alleged oral [settlement] agreement [requiring a conveyance of realty] was unenforceable as being within the Statute of Frauds."); Mangum v. Turner, 255 S.W.3d 223, 227 (Tex. Ct. App. 2008) (reciting the general rule, but refusing to apply the Statute of Frauds because the settlement at issue did not involve the transfer of an interest in real property); see also 37 C.J.S. Frauds, Statute of §104 (2008); 15B Am. Jur. 2d Compromise and Settlement § 16 (2011). As the Nebraska Supreme Court explained: "It would be strange indeed if an agreement which would be unenforceable under the [S]tatute of [F]rauds . . . were to become enforceable simply because the matter involved in the settlement agreement was pending as a lawsuit in court." Mullenax, 320 N.W.2d at 758.

We emphasize, however, that in determining whether the Statute of Frauds applies, courts must consider the terms of the settlement agreement, not the subject matter of the litigation. Settlement agreements arising from litigation that involves real property are subject to the Statute of Frauds only if the terms of the settlement agreement require the transfer of an interest in real property. See, e.g., Meyer v. Lipe, 14 S.W.3d 117, 120 (Mo. Ct. App. 2000) (explaining that the Statute of Frauds does not apply to settlements which fix a disputed or uncertain boundary line because no conveyance of land or passage of title is involved, only an effort to clarify and give effect to the title the parties already possess); Mangum, 255 S.W.3d at 227 (refusing to apply the Statute of Frauds in a suit seeking rescission of three deeds because the terms of the settlement did not require the transfer of a real property interest). Because the settlement agreement herein required Ms. Elrod to transfer her one-half interest in the Prim Lane property to Ms. Waddle, the Statute of Frauds applies.

We next consider whether the Statute of Frauds bars enforcement of the settlement agreement at issue in this appeal. As already explained, parol contracts are enforceable if "some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person lawfully authorized by such party." Tenn. Code Ann. § 29-2-101(a)(4). The Statute of Frauds does not require a written contract, only a written memorandum or note evidencing the parties' agreement. Huffine, 257 S.W. at 89. Additionally, while the writing required by the Statute of Frauds must contain the essential terms of the contract, it need not be in a single document. See Lambert v. Home Fed. Sav. & Loan Ass'n, 481 S.W.2d 770, 773 (Tenn. 1972). As this Court explained in Lambert:

> The general rule is that the memorandum, in order to satisfy the statute, must contain the essential terms of the contract, expressed with such certainty that they may be understood from the memorandum itself or some other

writing to which it refers or with which it is connected, without resorting to parol evidence. A memorandum disclosing merely that a contract had been made, without showing what the contract is, is not sufficient to satisfy the requirement of the Statute of Frauds that there be a memorandum in writing of the contract.

Id. (quoting 49 Am. Jur. Statute of Frauds § 353, 363-64); see also Blair v. Snodgrass 33 Tenn (1 Sneed) 1, 25 (1853) ("The contract must be in writing, be certain in its terms, and be signed by the party to be charged with its performance. The form of the instrument is perfectly immaterial, as the statute of frauds merely requires that the contract, 'or some memorandum or note thereof, shall be in writing.' But the written evidence of the contract must be reasonably certain in itself, as to the estate intended to be sold, and the terms of sale, as parol evidence to supply a writing defective in this respect is inadmissible."); Williams v. Buntin, 4 Tenn. App. 340, 347 (1927) ("[T]he memorandum or note required . . . may be in two or more papers. . . . [I]t is not required that each paper of itself be sufficient in content to satisfy the statute.").

Of course, even if one or more memoranda are produced sufficiently describing the terms of a parol agreement, the Statute of Frauds also requires that one of the writings be signed by the party to be charged or by some other person authorized to act on that party's behalf. Tenn. Code Ann. § 29-2-101(a)(4). The authority of the agent or the evidence of his agency need not be in writing, however. Johnson v. Somers, 20 Tenn. (1 Hum.) 268, 271 (1839); Texas Co. v. Aycock, 227 S.W.2d 41, 44 (Tenn. 1950). While the Statute of Frauds does not define "signed," many years ago the Court of Appeals considered whether a party's printed name on a bill of sale satisfied the signature requirement. See Gessler v. Winton, 145 S.W.2d 789 (Tenn. Ct. App. 1940). In holding that the printed name was sufficient, the Court of Appeals stated:

The [S]tatute [of Frauds] does not specify any particular form of signing. It merely requires that the party to be charged shall have signed the memorandum. It has been held that a cross mark is a good signature; also initials; even numerals, when used with the intention of constituting a signature; and a typewritten name or imprint made by a rubber stamp has the same effect; and this is equally true, though the typewriting or stamp impression be made by another, if the person to be charged has directed it.

. . . .

This has been the law in England for more than a century, and has been followed quite generally in this country.

-11-

Id. at 794 (citations and internal quotation marks omitted).

While Gessler predates email, its holding appears broad enough to encompass typed names appearing in emails. However, we need not rely upon Gessler to determine whether the email that includes the name of Ms. Elrod's attorney satisfies the Statute of Frauds requirement of a writing signed by the party to be charged. In 2001 the General Assembly enacted the UETA. Ms. Waddle relied upon the UETA in the trial court when arguing that the email constituted a writing for purposes of the Statute of Frauds and that Mr. Reed's name on the email constituted the signature of an agent of Ms. Elrod, the party to be charged. She has continued to advance these arguments on appeal.[10]

The UETA "applies to electronic records and electronic signatures relating to a transaction." Tenn. Code Ann. § 47-10-103(a).[11] The General Assembly has declared that the UETA:

> must be construed and applied to:
>
> (1) Facilitate electronic transactions consistent with other applicable law;
> (2) Be consistent with reasonable practices concerning electronic transactions and with the continued expansion of those practices; and
> (3) Effectuate its general purpose to make uniform the law with respect to the subject of [the UETA] among states enacting it.

Tenn. Code Ann. § 47-10-106. The UETA does not require parties to conduct transactions by electronic means. Tenn. Code Ann. § 47-10-105(a). Rather, the UETA governs "transactions between parties each of which has agreed to conduct transactions by electronic means. Whether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct." Tenn. Code Ann. § 47-10-105(a)-(b). "Transaction means an action or set of actions occurring between two (2) or more persons relating to the conduct of business, commercial, or governmental affairs." Tenn. Code Ann. § 47-10-102(16). Under the UETA:

---

[10] Ms. Elrod personally signed both her response to Ms. Waddle's motion to enforce the settlement and her affidavit accompanying the response. However, Ms. Waddle has not argued that these documents or Ms. Elrod's signature on these documents satisfied the Statute of Frauds.

[11] The UETA "does not apply to a transaction to the extent it is governed by: (1) [a] law governing the creation and execution of wills, codicils, or testamentary trusts; or (2) Title 47, chapters 1-9, excepting §§ 47-1-107, 47-1-106, and titles 47, chapters 2 and 2A." Tenn. Code Ann. § 47-10-103(b).

(a) A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.

(b) A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation.

(c) If a law requires a record to be in writing, an electronic record satisfies the law.

(d) If a law requires a signature, an electronic signature satisfies the law.

Tenn. Code Ann. § 47-10-107(a)-(d). "Electronic signature" includes "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." Tenn. Code Ann. § 47-10-102(8); see also id. cmt. 7 ("[T]he mere inclusion of one's name as part of an email message" qualifies as an electronic signature "so long as in each case the signer executed or adopted the symbol with the intent to sign.").

Applying the foregoing principles, we conclude that the Statute of Frauds does not bar enforcement of the settlement agreement at issue in this appeal. The parties, through their attorneys, evidenced an intent to finalize the settlement by electronic means; thus, the UETA applies. See, e.g., Crestwood Shops, L.L.C. v. Hilkene, 197 S.W.3d 641, 651-53 (Mo. Ct. App. 2006) (holding that the UETA applied because the parties manifested their intent to conduct business by email). Pursuant to section 47-10-107(c), the emails counsel exchanged constitute a signed memorandum, note, or writing for purposes of the Statute of Frauds.

Additionally, under the principles discussed in Lambert, the emails, considered along with the legal description of the Prim Lane property in the cross-claim, described the terms of the parol agreement with sufficient specificity to satisfy the Statute of Frauds. In particular, the emails described the following four material terms of the settlement: (1) Ms. Elrod would convey her interest "in the property" back to Ms. Waddle; (2) each party would sign a release giving up any claims she may have had against the other party; (3) Ms. Waddle would not be responsible for court costs; and (4) Ms. Elrod would not admit guilt. Ms. Elrod's attorney confirmed the settlement, responding electronically "[t]hat is our agreement." While the emails referred only to "the property," the Prim Lane property was the only realty at issue in the litigation, and Ms. Waddle's cross-claim included a full legal description of the Prim Lane property.[12] As stated in Lambert, a writing is sufficient if the

_____

[12] That the identity of the property was not in doubt is also illustrated by Ms. Elrod's response to Ms. Waddle's motion for enforcement, which was signed by Ms. Elrod and her attorney. The response described the intent of the settlement as "effect[ing] a lawful [rescission] of the transfer to Ms. Elrod" of "the property" that Ms. Waddle had attempted to convey to a Nashville investment company.

terms of the agreement may be understood either from the writing itself or from some other writing connected with it. The emails and cross-claim satisfy this standard.

Furthermore, although Ms. Elrod did not sign the email, there is no dispute that Mr. Reed was acting as her agent when he negotiated the settlement. Had he written his signature on a printed version of the email, rather than typed his name at the end of the email, his signature would undoubtedly have been sufficient to satisfy the Statute of Frauds. The UETA, recognizing that all sorts of transactions are now routinely conducted by electronic means on a daily basis, obviates the need for a handwritten signature. Mr. Reed's typed name at the end of the email constitutes an "electronic signature." Tenn. Code Ann. § 47-10-107(d). As the agent of Ms. Elrod, Mr. Reed's electronic signature on the email confirming the terms of the settlement agreement satisfies the signature requirement of the Statute of Frauds. See Kloian v. Domino's Pizza L.L.C., 733 N.W.2d 766, 774 (Mich. Ct. App. 2006); Hilkene, 197 S.W.3d at 652-53; Williamson v. Delsener, 874 N.Y.S.2d 41, 41-42 (N.Y. App. Div. 2009).

## Conclusion

The Statute of Frauds applies to settlement agreements requiring the transfer of an interest in real property. However, the Statute of Frauds does not bar enforcement of the settlement agreement at issue in this appeal. The emails counsel for the parties exchanged, along with the legal description of the Prim Lane property included in the cross-claim, constitute a sufficiently definite writing, note, or memorandum, and the email confirming the terms of the settlement agreement included the electronic signature of the attorney and authorized agent of Ms. Elrod, the party to be charged. Thus, on these alternate grounds we affirm the Court of Appeals' judgment enforcing the settlement agreement, including the taxing of court costs to Ms. Elrod. Costs of this appeal also are taxed to Ms. Elrod, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, CHIEF JUSTICE

-14-