IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 12, 2023 Session

## LOREN PROBST ET AL. v. LIBERTY MUTUAL GROUP, INC.[1] ET AL.

**Appeal from the Chancery Court for Marshall County**
**No. 59CH1-2020-CV-19045      J. B. Cox, Chancellor**

_____

**No. M2022-01477-COA-R3-CV**
_____

This appeal challenges the enforceability of a purported settlement agreement among homeowners, their insurance provider, and a service provider. The plaintiffs originally brought claims against their insurance provider and a service provider after efforts to repair water damage resulted in further damage to their home. The dispute progressed to settlement negotiations, and it seemed an agreement was reached; however, the plaintiffs stopped short of executing the written agreement. The defendants filed a joint motion to enforce the settlement agreement, which the plaintiffs opposed in the trial court, claiming that "counsel was not provided with express authorization to accept" the defendants' counteroffer. The trial court deemed it a case of "buyers' remorse" and granted the defendants' motion to enforce the settlement agreement. On appeal, the plaintiffs raise the sole issue of whether a condition subsequent made the agreement unenforceable. Defendants contend that this issue was waived because it was not raised in the trial court. We have determined that the plaintiffs waived their only issue on appeal by failing to raise it in the trial court. We have also determined, as the defendants contend, that the trial court correctly ruled that the parties entered into an enforceable settlement agreement. Thus, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the court, in which W. NEAL MCBRAYER and JEFFREY USMAN, JJ., joined.

August C. Winter, Brentwood, Tennessee, for the appellants, Loren Probst and Daniel Steakin.

_____

[1] The complaint identifies the defendant homeowner's insurance company as Liberty Mutual Group, Inc. However, in the appellee's brief filed by Liberty Insurance Corporation, it states that it was "incorrectly named in the Complaint and Notice of Appeal as Liberty Mutual Group, Inc." Plaintiffs do not contest this statement. Thus, for continuity, this court maintains the case names of the trial court in the caption; however, we recognize that Liberty Insurance Corporation is the defendant insurer.

Brian C. Neal, Garry Grooms, Kate A. Hamilton, Nashville, Tennessee, for the appellee, Liberty Mutual Group, Inc.

Richard C. Mangelsdorf, Jr., Brentwood, Tennessee, for the appellee, Blues Limited Restoration, Inc.

## OPINION

### FACTS AND PROCEDURAL HISTORY

In September 2019, Loren Probst and Daniel Steakin ("Plaintiffs")[2] discovered a leak on the second floor of their home in Chapel Hill, Tennessee. The property suffered significant damage, including damage to the ceilings, carpet, flooring, and drywall throughout the first floor.

Plaintiffs reported the damage to their homeowners' insurance carrier, Liberty Insurance Corporation ("Liberty"), which promptly inspected the home and sent out a service provider. Thereafter, Liberty employed a second service provider, Blues Limited Restoration, Inc.,[3] ("Blues Limited") operating as Servpro, to repair the damage and finish the drying process. After Blues Limited completed its work, a pipe burst, the HVAC was damaged by dust and debris, and the water heater leaked. Plaintiffs alleged that this later damage was a result of Blues Limited's repair work. Because of this damage, Plaintiffs relocated to a hotel, where they stayed through December 2019. During this time, Plaintiffs had the property tested for mold, which determined that there was extensive mold growth. Liberty requested to perform its own mold test, and Plaintiffs attempted to bid and hire other contractors for repairs, but Plaintiffs claim that all contractors declined to provide services after speaking to Liberty.

In March 2020, Plaintiffs filed suit seeking to recover damages against Liberty and Blues Limited (collectively "Defendants"), asserting claims for "breach of contract," "bad faith claim against insurer," "negligence," and "vicarious liability." Before discovery was completed, the parties entered into settlement negotiations, evidenced by numerous emails exchanged between counsel.

---

[2] Plaintiffs assert in the complaint that both are listed as covered individuals on the insurance policy, a fact not disputed by Liberty.

[3] Plaintiffs first filed suit against Liberty Mutual Group, Inc., and ABCH Restoration, LLC. In their amended complaint, Plaintiffs replaced ABCH with Core Restoration. Finally, after a joint motion from the parties, the court ordered that Blues Limited Restoration, LLC, be substituted for ABCH Restoration, leaving Liberty and Blues Limited as the defendants.

On December 17, 2021, counsel for Liberty emailed a detailed counteroffer to Plaintiffs' counsel, Benjamin Lewis,[4] (copying counsel for Blues Limited), proposing a payment to Plaintiffs and their mortgage company and further proposing that Plaintiffs acknowledge that "they will need to enter into a Settlement and Release Agreement incorporating these and other terms."

Plaintiffs' counsel responded the same day, agreeing to the proposed terms, "upon the confirmation" that Defendants "will not be pursuing any amounts . . . against my clients." He further noted that Plaintiffs' home had been sold, the mortgage satisfied, and there was no need to include the mortgage company.

Six weeks later, on January 28, 2022, Liberty's counsel sent the full text of the agreement and advised Plaintiffs' counsel, Benjamin Lewis, that "Blues Limited and Liberty have agreed upon the terms contained in the attached Settlement and Release Agreement." He requested that Mr. Lewis review the agreement and advise of any revisions. The written agreement included the additional terms of Liberty issuing payment to Plaintiffs and their mortgagee unless Plaintiffs provided documentation of satisfaction of the lien. In such case, Liberty would issue payment within thirty days of that documentation. The agreement also included language that Plaintiffs would not disparage Defendants or lodge any complaint against them with any public or administrative agency. However, this offer failed to include the language that Plaintiffs' counsel had requested, that Defendants would not pursue any amounts against Plaintiffs and making the non-disparagement clause reciprocal. Thus, on January 30, Plaintiffs' counsel responded, requesting that this language be added.

Then, in early March, Plaintiffs' counsel again emailed Defendants' counsel:

It's been several weeks since we agreed in principal to a settlement. Respectfully, it is unreasonable for it to take this long to simply work out the settlement agreement language. Our changes are not significant overall.

Please provide a substantive update this week with a timeline for getting this finalized.

The next day, counsel for Liberty responded, copying Blues Limited's counsel, recapping the course of negotiations:

From Liberty's perspective, the parties agreed to a settlement in December 2021, I drafted a written settlement and release agreement incorporating those terms and shared it on January 28, 2022 ("the Proposed Agreement"), but Plaintiffs did not accept the Proposed Agreement. Instead, on January 30,

---

[4] Benjamin Lewis was the third attorney to represent Plaintiffs in the trial court. August Winter represents Plaintiffs in this appeal; Mr. Winter did not represent Plaintiffs in the trial court.

2022, Plaintiffs proposed two (2) new terms that were not present in the settlement offer Plaintiffs accepted in late 2021: (1) making the non-disparagement provision mutual and (2) adding a provision that Plaintiffs owe no further monies to the defendants.

With regard to Plaintiff[s'] January 30 counter-offer, I have advised you and [Blues Limited's counsel] that Liberty is willing to agree (a) Plaintiffs owe no further monies to Liberty with regard to the "Policy" as defined in Proposed Agreement and (b) to a mutuality provision added within the non-disparagement provision appearing in the Proposed Agreement, so long as the revised non-disparagement provision provides carve outs related to Liberty's prior reporting of the "Claims" as defined in the Proposed Agreement to various reporting agencies, as well as in Liberty's response to "the Lawsuit" and "the DoI [Tennessee Department of Commerce & Insurance] Complaint" as defined in the Proposed Agreement, in addition to any other instances in which Liberty makes known to others that it investigated, incurred expenses, and/or paid out monies related to the Claims ("Liberty's Counter-Proposal").

To date, (a) Plaintiffs have not agreed to the Proposed Agreement, (b) [Blues Limited] has not responded to Plaintiffs' January 30 counter-offer, and (c) it is unclear whether Plaintiffs or [Blues Limited] will agree to Liberty's Counter-Proposal.

Due to the passage of time, and the parties' failure to communicate settlement to the trial court, discovery deadlines have passed or drawing to a close. For example, I see Defendants' deadline to disclose their expert reports is presently set for March 15. We either need to settle the case or complete discovery and prepare for trial.

Liberty's offer to settle this dispute per (a) the terms [of] the Proposed Agreement or (b) Liberty's Counter-Proposal will remain open until March 14, 2022. After that time, Liberty's offer to settle is withdrawn as I will be forced to incur additional monies to defend this claim, including preparing and producing Liberty's expert disclosures.

On March 14, counsel for Blues Limited responded that his "client has agreed to the settlement terms," and the parties determined that Liberty's counsel would "draft the revisions."

Then, on March 17, 2022, counsel for Liberty sent the revisions to all parties with the following notes:

- 4 -

The highlighted portions deal with the changes I made regarding mutuality of non-disparagement and no further payment language requested by Plaintiffs. . . .

Two things:

1. I am still awaiting final approval from Liberty regarding the revised language. In an effort to keep this process moving, I share this language with you in case you have any changes. I will communicate with you as soon as my contact at Liberty indicates approval regarding the language.

2. Ben, [referring to Plaintiffs' counsel] you will see that I have not changed the language regarding proof via Exhibit "A" and 30 days withholding of Liberty's payment due to mortgage holder pay off. I wanted to change the agreement as little as possible to avoid further delay.

However, I believe you and l have already assembled Exhibit A, and I have the Liberty payment already in hand at my office. I pledge to send to you the payments soon after receipt of the signed agreement with Exhibit A attached.

On March 31, counsel for Liberty followed up to see if Plaintiffs had signed the agreement, adding, "To be clear, my client has accepted and approved the language contained herein." Plaintiffs did not reply to this email.

Two months later, by agreed order entered on May 31, 2022, Benjamin Lewis and the firm of McCarter East, PLLC, withdrew as counsel for Plaintiffs and were succeeded by Joshua A. Jenkins and Hagan Jenkins Law Group, PLLC.[5]

Then in August of 2022, Defendants filed a "Joint Motion to Enforce Settlement and Award Fees," alleging:

After engaging in considerable discovery, in December 2021, counsel for all parties agreed in writing to settle this dispute. However, Plaintiffs have refused to execute the written settlement agreement prepared by Defendants and submitted to Plaintiffs in early 2022 or a revised settlement agreement shared with them, at their request, in March 2022.

In response to the motion, Plaintiffs "dispute that a valid and enforceable settlement agreement was reached," generally because "the material terms were not agreed to, and

_____

[5] Mr. Lewis then filed a motion for attorney fee lien on June 9, 2022, which was granted, and Plaintiffs agree that "former counsel Benjamin Lewis and McCarter East, PLLC, are entitled to a lien against the gross settlement amount payable to Plaintiffs."

prior counsel was not provided with express authorization to accept the counter-offer from the Defendants."

After a hearing, the trial court entered its September 21, 2022 order "granting, in part, and denying, in part, Defendants' joint motion to enforce settlement and award fees and granting Plaintiffs' prior counsel's motion for attorney fee lien." The trial court found that:

> Plaintiffs are bound by the terms set forth in the six-page settlement and release agreement (along with the 24-page Exhibit A attached thereto) shared via email with Plaintiffs' counsel on March 17, 2022 (attached to the Joint Motion to Enforce Settlement and Award Fees as collective Exhibit 10 ("the Agreement")).[6]

The trial court further found that this was a case of "buyers' remorse" because "a binding settlement agreement was reached between all parties' counsel" and "Plaintiffs did not present any evidence at the hearing that would allow the Court to find Plaintiffs had not given Mr. Lewis . . . consent to agree to the terms set forth in the Agreement." Further, the trial court noted, "Plaintiffs also did not waive attorney-client privilege to allow their current counsel, Mr. Jenkins, to present any other proof or argument in this regard."

This appeal followed.

## ISSUES

Plaintiffs raise one issue on appeal, restated as whether Plaintiffs can be held to a conditional agreement when Defendants purportedly failed to meet that condition, specifically Liberty's condition to "settle this dispute" before March 14.

Defendant Liberty raises the following issues, restated here as:

I. Whether Plaintiffs waived their sole issue on appeal by not raising it in the trial court below.

II. Whether Plaintiffs waived the issues raised in the trial court by not raising those issues on appeal.

III. If not, whether the execution of formal settlement documents was a condition subsequent to settlement.

---

[6] The trial court denied Defendants' request for attorney's fees, and that ruling is not at issue in this appeal.

IV.  Whether the following issues raised in the trial court below fail as a matter of law: whether counsel lacked authority to settle the case, whether Plaintiffs established that there was no "meeting of the minds" on the terms of the settlement.

Defendant Blues Limited disputes Plaintiffs' issue as "unsatisfactory," pursuant to Tennessee Rule of Appellate Procedure 27, and submits the following consolidated issue for review: whether the trial court was correct in finding that a binding agreement was established between the parties, and if so, which version of that agreement is binding upon them.

## STANDARD OF REVIEW

"The determination of whether a contract has been formed is a question of law." *St. Paul Cmty. Ltd. P'ship v. St. Paul Cmty. Church*, No. M2017-01245-COA-R3-CV, 2018 WL 5733288, at *2 (Tenn. Ct. App. Oct. 31, 2018) (citations omitted). As such, "[w]e review the trial court's resolution of questions of law de novo, with no presumption of correctness." *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). We review the trial court's factual findings de novo upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *see also Armbrister*, 414 S.W.3d at 692.

## ANALYSIS

### I.

Plaintiffs raise one issue on appeal: "whether the plaintiff insureds can be held to a conditional settlement agreement after the defendant insurer failed to submit an authorized settlement agreement before the expiration of the deadline set by the insurer." Before reaching the merits of the issue, however, we must address the argument of Defendants that "Plaintiffs have waived the sole issue presented on appeal regarding Liberty's compliance with the alleged condition subsequent." After a thorough review of the record, we must agree: the sole issue raised by Plaintiffs on appeal has been waived.

Our Supreme Court has stated unequivocally, "Issues raised for the first time on appeal are waived." *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 670 (Tenn. 2013) (citations omitted); *see also Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 511 (Tenn. 2010) ("It is axiomatic that parties will not be permitted to raise issues on appeal that they did not first raise in the trial court."). However, the court explains, "The fact that the party phrased the question or issue in the trial court in a different way than it does on appeal does not amount to a waiver of the issue." *Powell*, 312 S.W.3d at 511 (citing *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 143 n. 1 (Tenn. 2001) (noting that "the failure to use the right label does not result in a waiver")). Further, the court points out that "[p]arties invoking this principle have the burden of demonstrating that the issue sought to

be precluded was, in fact, not raised in the trial court." *Id.* (citing *Fayne v. Vincent*, 301 S.W.3d 162, 171 (Tenn. 2009)).

Both Defendants raise the issue of waiver in their respective briefs, and Liberty demonstrates Plaintiffs' failure to raise the issue in the trial court by explaining, in part:

> The sole issue raised by Plaintiffs in their Appellants' Brief is that Liberty has failed to comply with an alleged condition subsequent. Plaintiffs identify the condition subsequent to be Liberty's delivery of "an authorized Settlement and Release Agreement by the March 14, 2022 settlement deadline." (Brief, p. 10.) Plaintiffs did not advance this argument in the Chancery Court below. (T.R. Vol. 2, p. 213; Hearing Vol. 3, 12:1-13:16; Hearing Vol. 3, 17:5-7.) Rather, Plaintiffs argued there that the settlement agreements were unenforceable either because there was no meeting of the minds on settlement terms or because they did not authorize Mr. Lewis to accept the settlement terms. (T.R. Vol. 2, p. 212-213; Hearing Vol. 3, 12:1-13:16; Hearing Vol. 3, 17:5-7.)
>
> Nor did Plaintiffs designate this issue when they filed their Designation of Record on Appeal on November 18, 2022.

In their reply brief, Plaintiffs argue that their position on appeal is "on all fours with the argument presented" in the trial court. They further claim that Defendants' waiver arguments "are without merit and arise from inaccurate readings of the record on appeal." We respectfully disagree.

Defendants' position is clearly supported by the record. In Plaintiffs' response to Defendants' motion to enforce, Plaintiffs "dispute that a valid and enforceable settlement agreement was reached between the parties" because "material terms were not agreed to by Plaintiffs," and "prior counsel was not provided with express authorization to accept the counter-offer from the Defendants." (Footnote omitted). Their response makes no mention of either the March 14 deadline or a condition subsequent.

In the hearing before the trial court, Plaintiffs' counsel offered the same argument: "Our position is that they did not agree to the material terms." The only mention of March 14 is by Liberty's counsel, indicating the date on which all parties agreed to the terms and Plaintiffs' counsel asked him to draft the agreement. Similarly, the *Borena* case, cited by Plaintiffs in their response to the motion to enforce and at the hearing, focuses on the authority of an attorney to agree to a settlement on behalf of his client. *Borena v. Yellow Cab Metro, Inc.*, 342 S.W.3d 506 (Tenn. Ct. App. 2010). In our review of the record, we find that there is no mention or even a suggestion at the trial court level of the failure of a condition subsequent, Plaintiffs' issue now raised on appeal.

"It has long been the general rule that questions not raised in the trial court will not be entertained on appeal." *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983) (citations omitted). Thus, we find that Plaintiffs' sole issue has been waived.

II.

For completeness, we shall consider whether the trial court was correct in finding that the March 14 agreement was binding upon the parties.

Our Supreme Court has previously found that "[a] settlement agreement made during the course of litigation is a contract between the parties, and as such, contract law governs disputes concerning the formation, construction, and enforceability of the settlement agreement." *Waddle v. Elrod*, 367 S.W.3d 217, 222 (Tenn. 2012). In determining whether a contract is valid, our Supreme Court has provided:

> The requirements for a valid contract are well-settled:
>
> > While a contract may be either expressed or implied, or written or oral, it must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced.

*Higgins v. Oil, Chem. & Atomic Workers Int'l Union, Loc. No. 3-677*, 811 S.W.2d 875, 879 (Tenn. 1991) (citations omitted). *Gurley v. King*, cited by all parties in their arguments, further explains, "Destruction of contracts because of uncertainty has never been favored by the law, and with the passage of time, such disfavor has only intensified." 183 S.W.3d 30, 34 (Tenn. Ct. App. 2005). "[A] binding contract may be formed if the parties agree on the material terms, even though they leave open other provisions for later negotiation." *Id.* at 36 (citations omitted). Addressing whether a letter of intent, specifically, should be binding, this court explained:

> In determining whether or not the letter should be construed as a binding contract, we must keep in mind that:
>
> > "[t]he primary test as to the actual character of a contract is the intention of the parties, to be gathered from the whole scope and effect of the language used. . . ."
>
> 17 Am.Jur.2d Contracts § 1 (1964).

*Id. at* 43.

In the present case, there is a well-documented negotiation that culminates in mutual assent to the terms. *See Higgins*, 811 S.W.2d at 879. For sufficient consideration, the agreement provides: "In exchange for Plaintiffs' acceptance of payment from Liberty . . . Plaintiffs release any claims they may now, or in the future have, claim, or assert against Liberty and Blues Limited."

As for mutual assent, on January 28, counsel for Liberty sent a draft of the agreement to all parties, asking for their review and any revisions. Plaintiffs' counsel responded on January 30 with the "comments/suggestions" that counsel add two additional terms: 1) a statement that there are no further amounts owed among the parties and 2) a reciprocal disparagement agreement. On March 7, Plaintiffs' counsel pushed for a "substantive update" and "a timeline for getting this finalized." A week later, counsel for Blues Limited confirmed that his clients have "agreed to the settlement terms," and Plaintiffs' counsel requested that Liberty's counsel draft the revision. On March 14, there was mutual assent by all parties to the material terms.

Then on March 17, counsel for Liberty sent the revised agreement in writing—including the two additional terms requested by Plaintiffs' counsel—to all parties, stating that he is "still awaiting final approval from Liberty regarding the revised language." Two weeks later, Liberty's counsel followed up, confirming that his client "has accepted and approved the language contained herein." By March 31, there was clearly an agreement to all language and terms by all parties.

As the trial court correctly found after hearing arguments from the parties on the motion to enforce the settlement agreement, "[T]here was an agreement here. No proof to the contrary. Their nonsignature notwithstanding. That e-mail chain is specific and explicit, and without counterproof in this circumstance represents to the Court's mind offer acceptance and all material terms necessary for agreement by an agent of the plaintiffs, their then-counsel."

For the foregoing reasons, we affirm the trial court in its determination that the March 17 written settlement agreement is enforceable.

## IN CONCLUSION

Accordingly, the judgment of the trial court is affirmed, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against Plaintiffs, Loren Probst and Daniel Steakin.

_____
FRANK G. CLEMENT JR., P.J., M.S.