FILED
02/27/2025
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 5, 2025 Session

## TREVANIA DUDLEY HENDERSON v. ROBERT DWAYNE JOHNSON ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 23-0065-III      I'Ashea L. Myles, Chancellor**

_____

### No. M2024-00270-COA-R3-CV

_____

This appeal involves a property dispute between the decedent's husband and the decedent's only daughter, who is a child born of a prior marriage. The chancery court concluded that the husband had no interest in the property under the decedent's will, as the property had instead passed directly to the daughter, not the decedent, under the terms of the grandmother's will. Additionally, the chancery court concluded that any claim by the husband was also barred by an earlier settlement agreement reached by the parties. Under the terms of that settlement agreement, the chancery court also awarded attorney's fees and costs to the daughter. The husband appeals. We affirm

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

JEFFREY USMAN, J., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Grayson Smith Cannon, Nashville, Tennessee, for the appellant, Robert Dwayne Johnson.

Taylor J. Askew & David J. Zeitlin, Nashville, Tennessee, for the appellee, Trevania Dudley Henderson.[1]

### OPINION

### I.

At the epicenter of this appeal is an intra-family dispute over a residential property

---

[1] Appellee Rudy Title and Escrow, LLC, did not participate in this appeal.

located on Sheppard Place in Nashville, Tennessee. The parties disagree about whether Appellant Robert Dwayne Johnson, the second husband of Jane A. Dudley, is entitled to ten percent of the value of the property by operation of Ms. Dudley's will. Mr. Johnson insists that he is. Appellee Trevania Dudley Henderson, Ms. Dudley's daughter from a prior marriage, asserts that he is not. Ms. Henderson brought a declaratory judgment action in Davidson County Chancery Court to resolve the dispute. The Chancery Court agreed with Ms. Henderson that Mr. Johnson has no interest in the property and awarded attorney's fees and costs to Ms. Henderson. Mr. Johnson asserts error and appeals to this court.

The origins of this case reach decades into the past. Approximately thirty years before Ms. Dudley died, her mother, Ms. William J. Alexander, Sr., died. Ms. Alexander was survived by five children, including Ms. Dudley and Nancy Anderson Landstreet. Item II of Ms. Alexander's will expressly referenced the property at issue in this case and also Ms. Landstreet. It states:

> The home in which I have lived at 4426 Sheppard Place in Nashville since 1939 was conveyed by the sellers to my son, Thomas J. Anderson, as Trustee. My son, Thomas J. Anderson, has removed to the State of North Carolina and for that reason has been succeeded as Trustee, holding legal title to the property at 4426 Sheppard Place, by my son, Charles M. Anderson. All of my children know that I am the owner of the beneficial interest in the property. I therefore direct that Charles M. Anderson as Trustee, or his successor trustee, hold the property in trust for the use and benefit of my daughter, Nancy Anderson Landstreet, during her lifetime with the remainder upon her death to be transferred in equal shares to my children with the issue of a deceased child of mine to take the parent's share per stirpes.

Mr. Johnson acknowledges that the language of Ms. Alexander's will on its own does not convey to him any ownership interest in the property. Any claim that he has to the property instead arises from the will of his wife, Ms. Dudley.

Ms. Dudley died in 2017, thereby predeceasing her husband, Mr. Johnson; her daughter, Ms. Henderson; and her sister, Ms. Landstreet, who held a life estate in the property. Mr. Johnson's ownership claim originates from the language of Article VI of Ms. Dudley's will, which concerns the residue of Ms. Dudley's estate. Section One of Article VI expressly mentions Mr. Johnson and Ms. Henderson by name:

> If my husband, DWAYNE JOHNSON, shall survive me, my Executor shall determine the total value of my residence and all money, cash, stocks, bonds, mutual funds, accounts, notes, investments, and other intangible personal property including, without limitation, all of my right, title and

interest, if any, in the real property located at 4426 Sheppard Place, Nashville, Tennessee 37205. I give, devise, and bequeath one-half of this amount to my said husband in fee. I give, devise, and bequeath all of the rest, residue and remainder of the property which I may own at the time of my death, real, personal, and mixed, tangible and intangible, of whatsoever nature and wheresoever situated, including all property which I may acquire or become entitled to after the execution of this Will, to my daughter, TREVANIA DUDLEY HENDERSON, in fee.

Mr. Johnson's position is that this section of Ms. Dudley's will evinces an intention on the part of Ms. Dudley to devise to him one-half of whatever ownership interest in the Sheppard Place property Ms. Dudley owned at her death. He contends that, despite the terms of Ms. Alexander's will and Ms. Landstreet having outlived Ms. Dudley, Ms. Dudley actually did have a vested 1/5 ownership interest in the Sheppard Place property at the time of her death.

In the immediate aftermath of Ms. Dudley's death, Mr. Johnson and Ms. Henderson disagreed as to the administration of Ms. Dudley's will. Hoping to avoid "further protracted litigation and expense," the parties executed a settlement agreement in 2018. The parties expressly stated that they "mutually desire to enter into this Agreement in full settlement, satisfaction, discharge, and release of claims between the Parties and/or Decedent's Estate."

The settlement agreement includes a recital stating "[t]he only assets owned by [Ms. Dudley] at her death were her residence at 8621 McCrory Lane, Nashville, Davidson County, Tennessee (the "Residence") and [the Deceased's] tangible personal property located on or about the Residence." Despite an express reference to the Sheppard Place property in Ms. Dudley's will ("all of my right, title and interest, if any, in the real property located at 4426 Sheppard Place") and Mr. Johnson's later contention that the Sheppard Place property is an asset owned by Ms. Dudley at the time of her death, this property was not included among what purported to be a complete list of Ms. Dudley's assets at the time of her death.

There are four provisions of the settlement agreement that are particularly relevant to this appeal. One, Mr. Johnson and Ms. Henderson, the parties to the agreement, included a provision in their agreement entitled "Release of Claims." It states in relevant part,

[T]he Parties release the Estate and each other from any and all Claims. For purposes of this Agreement, the term 'Claims' means any and all actions, accounts, covenants, agreements, debts, liabilities, offsets, demands, costs, expenses, obligations, or causes of action of every nature (other than to enforce the obligations contained in this Agreement), whether

known or unknown, suspected or unsuspected, arising in contract or in tort, or at law, in equity, or pursuant to administrative rule or regulation, that have or could have been asserted by either party or the Estate at any time.

Two, the parties included a provision that speaks to their mutual understanding and assent to the terms of the agreement, which states:

**<u>Full Understanding and Opportunity to Consult Counsel</u>.** The parties expressly acknowledge that they have read this Agreement in its entirety, that they understand its terms, that they enter into this Agreement of their own free will, and that they have been afforded the opportunity to consult counsel about it.

Three, Mr. Johnson specifically agreed to execute a document indicating that he believed, in accordance with the other promises contained in the settlement agreement, that the Deceased's estate had been properly distributed. In accordance with this provision, a day later, Mr. Johnson signed the following statement:

**STATEMENT BY RESIDUARY DISTRIBUTEE OF PROPER DISTRIBUTION**

The undersigned person, being one of the residuary distributees of the residue of the Estate of Jane Dudley, deceased, under the decedent's Will, does hereby file this statement pursuant to T.C.A. § Section 30-2-601(b)(2), and does hereby state, as evidenced by the undersigned's signature below, as follows:

That the undersigned person is a residuary distributee of the residue of the estate of the decedent pursuant to the decedent's duly probated Will; and

That the undersigned person waives and excuses the Administrator from filing all court accountings; and

That the undersigned person acknowledges that the estate of the decedent has been properly distributed to the undersigned; and, finally,

That the undersigned person hereby fully relieves and releases Jeffrey Mobley, Administrator, from any and all liability in connection with the estate.

Four, the parties included language in their settlement agreement providing for attorney's fees and costs in the event of breach: "In the event of breach, the party not in breach shall be entitled to his or her attorney's fees and costs from the party in breach."

- 4 -

Despite their 2018 settlement agreement, another dispute arose between the parties in 2022 following the death of Ms. Dudley's sister, Ms. Landstreet. As noted above, with regard to the Sheppard Place property, Ms. Alexander had provided in her will as follows:

> I therefore direct that Charles M. Anderson as Trustee, or his successor trustee, hold the property in trust for the use and benefit of my daughter, Nancy Anderson Landstreet, during her lifetime with the remainder upon her death to be transferred in equal shares to my children with the issue of a deceased child of mine to take the parent's share per stirpes.

With the death of Ms. Landstreet, Ms. Henderson, along with the other beneficiaries within the class of individuals mentioned in Ms. Alexander's will, attempted to sell the property and distribute the proceeds. Mr. Johnson, however, objected, endangering the sale. This objection prompted the parties to obtain escrow services. Among other language of the escrow agreement, it stated the following:

> WHEREAS, Mrs. Henderson claims that she owns a 20% interest in the Property and is entitled to 20% of the proceeds from the sale of the Property pursuant to the Sale Agreement minus her share of the shared expenses (shared expenses include, but are not limited to, real estate commission, tax pro rata, closing attorney fees, estate attorney fees, recording fees, and reimbursements to family members), such 20% of such net proceeds being the amount equal to $422,283.19 (such amount, the "Net Proceeds"); and

> WHEREAS, Mr. Johnson claims to own a 10% interest in the Property (such 10% being one half (1/2) of the 20% interest claimed by Mrs. Henderson) and that he is entitled to one half of the Net Proceeds, which is the amount equal to $211,141.60;

> WHEREAS, Mrs. Henderson disputes Mr. Johnson's claim in the Property and the Net Proceeds; and

> WHEREAS, Mrs. Henderson and Mr. Johnson desire that Escrow Agent hold $215,000 of the Net Proceeds (such amount, the "Escrowed Funds") as escrow agent in accordance with the terms and provisions of this Agreement and Escrow Agent is willing to serve as such escrow agent and hold the Escrowed Funds in accordance with the terms and provisions of this Agreement;

Additionally, the escrow agreement provided as follows:

a. Mrs. Henderson will initiate a declaratory judgment action (hereinafter referred to as the "DEC Action") against Mr. Johnson and the Escrow Agent in Davidson County Chancery Court (hereinafter referred to as the "Court"), seeking a declaration that, inter alia, Mrs. Henderson is the real party in interest to the Escrowed Funds.

b. Following commencement of the DEC Action, the Escrow Agent, Mrs. Henderson, and Mr. Johnson will file a Joint Motion and Agreed Order for the Escrow Agent to deposit the Escrowed Funds with the Court pursuant to Tennessee Rule of Civil Procedure 67.01 (hereinafter referred to as the "Motion").

c. Upon the granting of the Motion and deposit of the Escrowed Funds with the Court, Mrs. Henderson, Mr. Johnson, and the Escrow Agent will stipulate to dismiss the Escrow Agent from the DEC Action with prejudice.

As the escrow agreement directs, Ms. Henderson brought a declaratory judgment action in Davidson County Chancery Court for the purpose of obtaining a final declaration concerning the rights to the proceeds of the sale of the Sheppard Place property. Therein, Ms. Henderson asserted (1) that her mother Ms. Dudley had a contingent not vested remainder interest in the Sheppard Place property at the time of her death, meaning Ms. Dudley had nothing to transfer to Mr. Johnson; (2) that, alternatively, Article VI of Ms. Dudley's will only entitled Mr. Johnson to an *amount* equal to one-half of the *value* of the Ms. Dudley's estate, not a one-half interest in the property; (3) that, regardless of these substantive points, Mr. Johnson already settled any and all claims he had concerning the distribution of Ms. Dudley's probate estate in 2018; and (4), that, by objecting to the sale of the property and clouding its title, Mr. Johnson breached the parties' settlement agreement, entitling Ms. Henderson to any and all of her attorney's fees stemming from the prosecution of the declaratory judgment action. Mr. Johnson denied any wrongdoing in his answer. He also filed a counter-complaint asserting that he owned one-tenth of the proceeds from the sale of the Sheppard Place property, requesting receipt of the escrowed funds, and arguing that he would be entitled to his attorney's fees if the trial court concluded that Ms. Henderson breached the parties' settlement agreement.

The parties filed cross motions for judgment on the pleadings. Leading up to the hearing on the motions, the parties contested, among other things, whether Mr. Johnson breached the terms of the settlement agreement. Ms. Henderson advanced this argument across multiple pre-hearing filings before the trial court, emphasizing the express terms of the settlement agreement demonstrated an intent on the part of each party to avoid the very lawsuit that Mr. Johnson's claim to an interest in the property had necessitated. Ms. Henderson also pointed to the mandatory language in the settlement agreement regarding

attorney's fees and relied upon that language to support a request for attorney's fees upon a finding that Mr. Johnson breached the terms of the settlement agreement.

The Chancery Court agreed with Ms. Henderson and made extensive findings. Among those findings in support of its conclusion, the Chancery Court found as follows: (1) Ms. Alexander's will created a life estate for the benefit of Ms. Landstreet; (2) during that life estate, Ms. Alexander's will gave her daughter Ms. Dudley a contingent remainder interest in the property, and that said interest would only vest upon the death of Ms. Landstreet; (3) because Ms. Dudley predeceased Ms. Landstreet, Ms. Dudley had no interest in the property to devise at the time of her death, meaning Mr. Johnson has no ownership interest in the Sheppard Place property or its proceeds. In relation to the parties' settlement agreement, the trial court found as follows: (1) the section of the settlement agreement concerning the release of claims constitutes "a general release, evidencing that the property specifically called out in the recitals does not circumscribe the scope of the Agreement's release"; (2) Mr. Johnson's claim regarding the property was not "unknown to him" at the time the parties entered the settlement agreement because Ms. Dudley's will mentions the property by name; (3) Mr. Johnson's "claim to an interest in the sale proceeds . . . was in breach of the Parties' settlement Agreement"; and (4) Ms. Henderson was entitled to reasonable attorney's fees and costs associated with her declaratory judgment action. Based on these findings, the trial court awarded Ms. Henderson $62,630 in attorney's fees and costs.

Mr. Johnson appealed to this court. He raises four issues on appeal. One, "Whether the Trial Court erred in concluding that Mrs. Anderson's Will created a trust?" Two, "When di[d] the life estate contained in Mrs. Anderson's Will vest: was it at the time of Mrs. Anderson's death or upon the death of the life tenant?" Three, "Whether the Settlement Agreement entered into by Mr. Johnson, Ms. Henderson, and Decedent's Estate precludes Mr. Johnson from his share in the proceeds of the sale of the Sheppard Property?" Four, "Whether the Trial Court erred in concluding that Ms. Henderson was entitled to attorney's fees under the Settlement Agreement?" Ms. Henderson responded to Mr. Johnson's contentions on appeal, arguing in support of the Chancery Court's rulings.

II.

This case was decided on competing motions for judgment on the pleadings. Judgment on the pleadings may be sought by parties "[a]fter the pleadings are closed but within such time as not to delay the trial." *Family Trust Servs. LLC v. Green Wise Homes LLC*, 693 S.W.3d 284, 296 (Tenn. 2024) (quoting Tenn. R. Civ. P. 12.03). "A motion for judgment on the pleadings involves the consideration of nothing other than what its title suggests; the motion requests that a court grant judgment based on the pleadings alone." *Harvey v. Shelby County*, No. W2018-01747-COA-R3-CV, 2019 WL 3854297, at *4 (Tenn. Ct. App. Aug. 16, 2019) (quoting *Sakaan v. Fedex Corp., Inc.*, No.

W2016-00648-COA-R3-CV, 2016 WL 7396050, at *5 (Tenn. Ct. App. Dec. 21, 2016)). Judgment on the pleadings may be granted when "the moving party is clearly entitled to judgment." *Family Trust Servs. LLC*, 693 S.W.3d at 296 (quoting *McClenahan v. Cooley*, 806 S.W.2d 767, 769 (Tenn. 1991)). Our role, then, is to review the trial court's decision on the parties' cross-motions for judgment on the pleadings, which we assess "de novo with no presumption of correctness." *Recipient of Final Expunction Order in McNairy County Circuit Court Case No. 3279 v. Rausch*, 645 S.W.3d 160, 167 (Tenn. 2022) (citing *Franks v. Sykes*, 600 S.W.3d 908, 911 (Tenn. 2020)). Evaluating whether the pleadings, on their face, entitle one party to a favorable judgment is itself a question of law, which we similarly review de novo. *Franks*, 600 S.W.3d at 911.

III.

The parties' briefing demonstrates agreement on at least three basic points. One, Ms. Alexander's will gave Ms. Landstreet a life estate in the property. Two, Ms. Alexander's will gave Ms. Dudley a future interest in the property. Three, Ms. Dudley's future interest took the form of a remainder.

In considering where the parties divide, Mr. Johnson's positioning on appeal brings to mind the idiom "out of the frying pan and into the fire,"[2] which refers at a minimum to leaping "from one bad predicament to another which is as bad"[3] and often to a circumstance that is "even worse."[4] The Chancery Court concluded that Ms. Dudley's interest in the Sheppard Place property constituted a contingent, not a vested, remainder. Accordingly, at the time of her death, Ms. Dudley had no interest in the property to confer upon Mr. Johnson via her will. Therefore, Mr. Johnson obtained no interest in the property via Ms. Dudley's will and, thus, has no interest in the Sheppard Place property.

Mr. Johnson does not dispute that if Ms. Dudley's interest in the property was contingent and not vested, then he has no interest in the property. The first two issues that Mr. Johnson raises on appeal act together to advance Mr. Johnson's argument that Ms. Dudley's interest in property was vested, not contingent, at the time of her death, which occurred before the death of the life tenant, Ms. Landstreet.

---

[2] "The origins of this idiom in the English language can be traced to 1528 and the writings of the legendary Thomas More, but this particular idiomatic image of moving from the frying pan into the fire can be traced even further back to the mid-1350s and Giovanni Boccaccio's *The Decameron*." *Berryhill v. Shelby Cnty. Gov't Civ. Serv. Merit Bd.*, No. W2022-01814-COA-R3-CV, 2024 WL 735417, at *6 n.9 (Tenn. Ct. App. Feb. 22, 2024).

[3] Judy Parkinson, *From Hue and Cry to Humble Pie: Curious, Bizarre, & Incomprehensible Expressions Explained* 81 (2000).

[4] Joseph Melillo & Edward M. Melillo, *American Slang: Cultural Language Guide to Living in the USA* 249 (2005).

Returning to the idiom, the Chancery Court's contingent remainder analysis provides the frying pan out of which Mr. Johnson, to prevail on appeal, must leap. Mr. Johnson does not dispute that if the interest is contingent, as the Chancery Court found it to be, then he has no interest in the Sheppard Place property irrespective of what Ms. Dudley's will may have attempted to provide him. However, when Mr. Johnson endeavors to leap out of that frying pan, he still finds himself squarely in the fire of the settlement agreement. That is so because even if Ms. Dudley owned a vested remainder when she died, Mr. Johnson signed away his ability to make a claim to any such interest through the parties' settlement agreement. The Chancery Court reached this conclusion, and, we conclude, properly so.

The judiciary encourages parties to work amicably to settle legal disputes outside the court system. *Harbour v. Brown for Ulrich*, 732 S.W.2d 598, 599 (Tenn. 1987); *Lovelace v. Copley*, 418 S.W.3d 1, 29 (Tenn. 2013) (collecting cases). The parties in this case did just that, memorializing a compromise over Ms. Dudley's assets.

"A settlement agreement made during the course of litigation is a contract between the parties, and as such, contract law governs disputes concerning the formation, construction, and enforceability of the settlement agreement." *Waddle v. Elrod*, 367 S.W.3d 217, 222 (Tenn. 2012); *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006). The rules for interpreting settlement agreements are no different from general rules of contractual interpretation. *Waddle*, 367 S.W.3d at 222. The "cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties," and "courts look to the plain meaning of the words in the document to ascertain the parties' intent." *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006) (first citing *Christenberry v. Tipton*, 160 S.W.3d 487, 494 (Tenn. 2005), then citing *Planters Gin Co. v. Fed Compress & Warehouse Co.*, 78 S.W.3d 885, 889-90 (Tenn. 2002)). When a contract is clear and unambiguous, "the literal meaning controls the outcome of the dispute." *Id.* We review the trial court's interpretation of the parties' settlement agreement in this case de novo, "according no presumption of correctness to the trial court's conclusions of law." *See id.*

The Chancery Court concluded that Mr. Johnson, in ratifying the parties' settlement agreement, promised Ms. Henderson that he would not pursue any claims against her or the Deceased's estate, and this agreement includes within its scope his present claim to one-half of the value of the Sheppard Place property. The Chancery Court based its ruling on the following language from the settlement agreement:

> [T]he Parties release the Estate and each other from any and all Claims. For purposes of this Agreement, the term 'Claims' means any and all actions, accounts, covenants, agreements, debts, liabilities, offsets, demands, costs, expenses, obligations, or causes of action of every nature

(other than to enforce the obligations contained in this Agreement), whether known or unknown, suspected or unsuspected, arising in contract or in tort, or at law, in equity, or pursuant to administrative rule or regulation, that have or could have been asserted by either party or the Estate at any time.

In the Chancery Court's view, this extraordinarily expansive language constituted a "general release," which is a term used in Tennessee to describe settlement agreement provisions that apply to "all claims between the parties which are in existence and within their contemplation" at the time of ratification. *See, e.g.*, *Richland Country Club, Inc. v. CRC Equities, Inc.*, 832 S.W.2d 554, 557 (Tenn. Ct. App. 1991) (citing *Cross v. Earls*, 517 S.W.2d 751 (Tenn. 1974)). General releases are distinguished from specific releases, which are "confined to specific matters or causes, and operate[] to release such claims that fairly come within the terms of the release." *Sherman v. American Water Heater Co., Inc.*, 50 S.W.3d 455, 459 (Tenn. Ct. App. 2001).

There are challenges in fully discerning Mr. Johnson's argument as to why the Sheppard Place property is not covered by the terms of the parties' settlement agreement. As we understand Mr. Johnson's briefing on this matter, it appears that he presents three arguments in support of his contention that the Chancery Court erred. One, he implicitly argues for an understanding of the settlement agreement as providing for a specific rather than general release and suggests that because the Sheppard Place property was not expressly referenced in settlement agreement, there was no release of his claim. Two, relatedly, Mr. Johnson suggests a lack of a knowing and voluntary waiver of his interest in the Sheppard Place property. Three, he asserts that the settlement agreement only relates to probate assets, and Mr. Johnson's interest in the Sheppard Place property is not a probate asset.

Starting with Mr. Johnson's objection to the Chancery Court's understanding of the scope of the parties' settlement agreement, we agree with the trial court that the release provision constitutes a general, rather than a specific, release of claims. Regarding their settlement agreement, Mr. Johnson and Ms. Henderson stated they "mutually desire to enter into this Agreement in full settlement, satisfaction, discharge, and release of all claims between the Parties and/or Decedent's Estate." As noted above, the language of the release provides as follows:

[T]he Parties release the Estate and each other from any and all Claims. For purposes of this Agreement, the term 'Claims' means any and all actions, accounts, covenants, agreements, debts, liabilities, offsets, demands, costs, expenses, obligations, or causes of action of every nature (other than to enforce the obligations contained in this Agreement), whether known or unknown, suspected or unsuspected, arising in contract or in tort, or at law, in equity, or pursuant to administrative rule or regulation, that have or could have been asserted by either party or the Estate at any time.

- 10 -

The language of this release is extraordinarily broad.

Mr. Johnson suggests, however, that the settlement agreement was limited exclusively to the assets expressly listed in the recitals. In the recitals, the settlement agreement states: "The only assets owned by Decedent at her death were her residence at 8621 McCrory Lane, Nashville, Davidson County, Tennessee (the 'Residence') and Decedent's tangible personal property located on or about the Residence . . . ." Mr. Johnson's litigation position as to why he has any interest in the Sheppard Place property is predicated upon Ms. Dudley, at the time of her death, actually having another asset – a 1/5 interest in the Sheppard Place property. In other words, under Mr. Johnson's litigation position, the recital statement that the McCrory Lane property and the tangible property were the only assets owned by Ms. Dudley at the time of her death would be false or at least inaccurate. As noted above, if the interest in the Sheppard Place property was not an asset owned by Ms. Dudley at the time of her death, and instead was merely a contingent interest, then Mr. Johnson remains, in the idiom set forth above, in the frying pan where he lacks any interest in the Sheppard Place property.

Mr. Johnson points to no language in the settlement agreement that limits the agreement to the property expressly noted in the recital. Returning to the idiom, it becomes even more difficult for Mr. Johnson to escape the fire given that the recitals purported to deal with all of Ms. Dudley's assets at the time of her death, and Mr. Johnson is now asserting there is another such asset – the Sheppard Place property. From our review of the extraordinarily expansive language of the settlement agreement, it is difficult to see how the release language would not apply to Mr. Johnson's assertion of a claim of right to the one-half of the value of the sale proceeds of the Sheppard Place property. It would be textually jarring to read a release provision that encompasses demands, obligations, or actions "whether known or unknown, suspected or unsuspected . . . that have or could have been asserted by either party or the Estate at any time" as being limited to those demands and claims that are expressly addressed in the settlement agreement's recitals. Mr. Johnson's claim to an interest in the Sheppard Place property falls within the plain language of the agreement.

Next, Mr. Johnson asserts that he did not knowingly and voluntarily relinquish an interest in the Sheppard Place property. This argument is unavailing. Ms. Dudley's will expressly mentions the Sheppard Place property, and Mr. Johnson undeniably had an awareness of the terms of Ms. Dudley's will. He and Ms. Henderson dueled over the administration of that very will. Furthermore, the settlement agreement also includes a separate provision that speaks to the parties' knowledge at the time of ratification, stating,

> **<u>Full Understanding and Opportunity to Consult Counsel</u>**. The parties expressly acknowledge that they have read this Agreement in its entirety, that they understand its terms, that they enter into this Agreement of their

own free will, and that they have been afforded the opportunity to consult counsel about it.

Mr. Johnson knew about his interest, if any, in the Sheppard Place property from the terms of Ms. Dudley's will. Nevertheless, as noted above, Mr. Johnson and Ms. Henderson stated they "mutually desire to enter into this Agreement in full settlement, satisfaction, discharge, and release of all claims between the Parties and/or Decedent's Estate." Also, as noted above, the release that Mr. Johnson signed encompasses "demands, obligations . . . or causes of action of any nature . . . whether known or unknown, suspected or unsuspected . . . that have or could have been asserted by either party or the Estate at any time." Mr. Johnson was aware of his interest in the Sheppard Place property, and he signed an agreement that included this expansive release without limiting language that would safeguard any interest that he might have in the Sheppard Place property. He did so agreeing to an express statement that he read and understood the settlement agreement and had been afforded an opportunity to consult with counsel regarding the parties' agreement. Simply stated, we cannot agree that Mr. Johnson's release of his interest in the Sheppard Place property lacked sufficient knowledge or volition.

Finally, Mr. Johnson asserts, regarding the Sheppard Place property, that "the interest belonging to [Ms. Dudley] at her death passed outside the probate estate" and "the Settlement Agreement and Proper Distribution only apply to probate assets." Mr. Johnson turns to Tennessee Code Annotated section 31-2-103 in support of his contention that interest in the Sheppard Place property passed outside the estate. He notes the language of this statutory measure provides, in part, as follows: "The real property of a testate decedent vests immediately upon death in the beneficiaries named in the will, unless the will contains a specific provision directing the real property to be administered as part of the estate subject to the control of the personal representative." Tenn. Code Ann. § 31-2-103.

There are several problems with Mr. Johnson's contention. As a foundational matter, it does not appear that the settlement agreement is limited to addressing the subset of property addressed by the will that passes through the estate rather than the full scope of the property addressed by the will. The recitals upon which Mr. Johnson relies certainly purport to address all assets owned by Ms. Dudley at the time of her death whether passing through the estate or not.

For example, in advancing this argument, Mr. Johnson makes much of a portion of the recital addressing the McCrory Lane Property, which is referred to as the "Residence" in the settlement agreement. Regarding the portion referenced by Mr. Johnson, in the recitals, the settlement agreement states the following:

The Will devised the Residence to Mr. Johnson and M[s].

Henderson in equal shares.  T.C.A. 31-2-103 provides in part:

> "The real property of a testate, decedent vests immediately upon death in the beneficiaries named in the will, unless the will contains a specific provision directing the real property to be administered as part of the estate subject to the control of the personal representative."

> The Will did not contain any provisions bringing the Residence into the hands of the Co-Administrators for administration.  Once the Will was admitted to probate, the Residence vested in Mr. Johnson and Ms. Henderson as equal tenants-in-common, relating back to the date of Decedent's death.

Noting this aspect of the settlement agreement, Mr. Johnson asserts that the McCrory Lane property would have passed pursuant to Tennessee Code Annotated § 31-2-103 directly and outside of probate estate.  He draws a parallel in his appellate brief between the Sheppard Place property and the McCrory Lane property in this regard.  The settlement agreement, however, expressly addresses the McCrory Lane property, which according to Mr. Johnson and the terms of the settlement agreement passed outside the probate estate.

Perhaps anticipating this complication for his position on appeal, Mr. Johnson seems to suggest in his briefing that the McCrory Lane property is handled through the settlement agreement because it was not the McCrory Lane property that was at issue in the settlement agreement but instead the proceeds of a sale of the McCrory Lane property which were passing through the estate.  At this point, significant internal tensions arise, however, in relation to Mr. Johnson's argument on appeal.  As Ms. Dudley's will plainly states, Mr. Johnson's interest in the Sheppard Place property is not in the title to the property itself but instead a one-half-interest in an "amount" equal to "value" of the Sheppard Place property.  Mr. Johnson's argument, nevertheless, seems to endeavor to wave away any connection between his interest in the value of the Sheppard Place property and Ms. Dudley's estate.  Instead, in Mr. Johnson's understanding, the estate becomes immaterial and his interest is one that vested immediately upon Ms. Dudley's death.

The express language of Ms. Dudley's will does not, however, allow this escape.  Mr. Johnson concedes that if his interest arises from the estate, then he is without recourse under the terms of the settlement agreement and under the signed "Statement by Residuary Distributee of Proper Distribution" with the accompanying closing of the estate.  In creating whatever interest Mr. Johnson has, if any, in the Sheppard Place property, Ms. Dudley's will provides as follows:

- 13 -

> If my husband, DWAYNE JOHNSON, shall survive me, my Executor shall determine the total *value* of my residence and all money, cash, stocks, bonds, mutual funds, accounts, notes, investments, and other intangible personal property *including*, without limitation, all of my right, title and interest, if any, in the real property located at 4426 Sheppard Place, Nashville, Tennessee 37205. I give, devise, and bequeath *one-half of this amount* to my said husband in fee. I give, devise, and bequeath all of the rest, residue and remainder of the property which I may own at the time of my death, real, personal, and mixed, tangible and intangible, *of whatsoever nature and wheresoever situated*, including all property which I may acquire or become entitled to after the execution of this Will, to my daughter, TREVANIA DUDLEY HENDERSON, in fee.

(Emphasis added). These aspects of Ms. Dudley's residuary clause make different awards to different persons, and we must presume that Ms. Dudley consciously used different language with regard to each intending to accomplish different results. *In re Estate of Clifton*, 633 S.W.3d 557, 559 (Tenn. Ct. App. 2021) (emphasizing the limited role of appellate courts in properly carrying out a testator's written directions); *Fisher v. Malmo*, 650 S.W.2d 43, 46 (Tenn. Ct. App. 1983) (directing courts to discern a testator's directions "from the particular words used in the will").

By its express terms, Ms. Dudley's will plainly awards Mr. Johnson no title ownership interest in the Sheppard Place property. He does not receive the Sheppared Place property but instead a monetary award of "value" equal to "one-half of [the] amount" of the residuary estate while Ms. Dudley simultaneously awards Ms. Henderson "all of the rest, residue, and remainder of [her] property" in "whatsoever nature and wheresoever situated." Furthermore, the Executor of Ms. Dudley's estate is charged with determining "the total *value* of my residence and all money, cash, stocks, bonds, mutual funds, accounts, notes, investments, and other intangible personal property *including*, without limitation, all of my right, title and interest, if any, in the real property located at 4426 Sheppard Place, Nashville, Tennessee 37205." (Emphasis added). With the Executor having determined this amount, Mr. Johnson would be entitled to "one-half of this *amount*." (Emphasis added). We fail to see how Mr. Johnson's interest in this amount arises independently of the estate and its administration. Nor has Mr. Johnson developed an argument addressing the elephant in the room, i.e., that his interest is limited to "value," not title. It is not the role of the court to develop such an argument for him. *See Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 615 (Tenn. 2010) (noting "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her").

Here, Mr. Johnson and Ms. Henderson entered a plainly written contract that included a comprehensive waiver of "any and all Claims" by each other against each other or Ms. Dudley's estate. Mr. Johnson ratified the settlement agreement willingly,

- 14 -

aware of the language of Ms. Dudley's will regarding the Sheppard Place property. Given his signing of the settlement agreement and a statement by the residuary distributee of proper distribution, and his doing so with full knowledge of the language of Ms. Dudley's will related to the Sheppard Place property, Mr. Johnson foreclosed any assertion of an interest in one-half the value of the Sheppard Place property, which forced this litigation. The language of Mr. Johnson's settlement agreement release and statement of proper distribution swallow his claim. In other words, even if for purposes of argument we were to assume that Mr. Johnson could escape the frying pan, a questionable assumption, he would only end up in the fire of the settlement agreement.

V.

Lastly, Mr. Johnson challenges the award of Ms. Henderson attorney's fees and costs. Two critical components undergird the Chancery Court's award. One, the Chancery Court determined that Mr. Johnson, by asserting a claim to one-half the value of the Sheppard Place property, breached the settlement agreement. Two, the Chancery Court noted that the settlement agreement expressly provided that "[i]n the event of breach, the party not in breach shall be entitled to his or her attorney's fees and costs from the party in breach."

Mr. Johnson does not dispute that Tennessee law allows a trial court to award attorney's fees and costs pursuant to a binding provision found in a contract. *See, e.g., Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017) ("One of the most common exceptions to the American Rule involves contracts that contain provisions expressly permitting or requiring the prevailing party to recover its reasonable attorney's fees incurred to enforce the contract." (citing *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 309 (Tenn. 2009))). Mr. Johnson instead argues that he did not breach the settlement agreement because the settlement agreement is addressed to breaches, not actions for declaratory judgment. He objects to the Chancery Court's determination that "[t]he Parties expressly executed the Agreement for the purpose of avoiding protracted litigation" and that Mr. Johnson assertion of a claim to Sheppard Place property "necessitated this [(the declaratory judgment)] action."

This analysis, however, from the Chancery Court is entirely appropriate. The parties drafted an extremely expansive release providing that

> [T]he Parties release the Estate and each other from any and all Claims. For purposes of this Agreement, the term 'Claims' means any and all actions, accounts, covenants, agreements, debts, liabilities, offsets, demands, costs, expenses, obligations, or causes of action of every nature (other than to enforce the obligations contained in this Agreement), whether known or unknown, suspected or unsuspected, arising in contract or in tort, or at law, in equity, or pursuant to administrative rule or regulation, that

have or could have been asserted by either party or the Estate at any time.

They did so for the expressly stated purpose that Mr. Johnson and Ms. Henderson "mutually desire to enter into this Agreement in full settlement, satisfaction, discharge, and release of claims between the Parties and/or Decedent's Estate."

Mr. Johnson's actions caused complications regarding the sale of the Sheppard Place property, forcing the formation of an additional escrow agreement, the holding of funds in the escrow account, and the filing of a declaratory judgment action to resolve the parties' dispute over these funds. The Chancery Court did not err in concluding that Mr. Johnson breached the settlement agreement on such grounds, or in awarding attorney's fees and costs to Ms. Henderson under the terms of the settlement agreement.

## VI.

For the aforementioned reasons, we affirm the judgment of the Chancery Court for Davidson County. Costs of this appeal are taxed to the appellant, Robert Dwayne Johnson, for which execution may issue if necessary. The case is remanded for further proceedings consistent with this opinion.

_____
JEFFREY USMAN, JUDGE